[Cite as *State v. Lemaster*, 2012-Ohio-971.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No.  11CA3236 |
| | : | |
| vs. | : | **Released: March 2, 2012** |
| | : | |
| BRANDY K. LEMASTER, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Timothy Young, Ohio Public Defender, and Jessica S. McDonald, Assistant
Ohio Public Defender, Chillicothe, Ohio, for Appellant.

Toni L. Eddy, City of Chillicothe Law Director, and Michele R. Rout,
Assistant City of Chillicothe Law Director, Chillicothe, Ohio, for Appellee.
_____

McFarland, J.:

{¶1} Appellant, Brandy Lemaster, appeals the Chillicothe Municipal

Court's judgment denying her motion to suppress all evidence obtained from

an allegedly illegal stop.  On appeal, Appellant contends that the court below

erred in ruling that there existed probable cause to stop her vehicle when the

video did not show any traffic violation in which to justify the stop.  As we

conclude that the trooper had probable cause to stop Appellant's vehicle, we

disagree.  Accordingly, we affirm the trial court's judgment.

FACTS

{¶2} Appellant's vehicle was stopped at 2:20 a.m. on May 28, 2010, as it was travelling north on State Route 23 after Trooper Morgan of the Ohio State Highway Patrol observed Appellant driving outside of the clearly marked lanes of travel and weaving within her lane. Based upon this observation, the trooper activated his emergency lights to initiate a traffic stop. Upon making contact with Appellant, Appellant informed Trooper Morgan that she was on her way to the hospital because she had just broken her ankle. The trooper noted Appellant's eyes appeared droopy, bloodshot and glassy, her speech was affected, and she seemed lethargic. Appellant also informed the trooper that she had taken Percocet and Xanax. After performing and failing a Horizontal Gaze Nystagmus field sobriety test, Appellant was transported by ambulance to Adena Medical Center.

{¶3} As Trooper Morgan's shift was ending, Trooper Wilson took over the investigation and met with Appellant at the hospital. After Appellant refused a urine test, she was cited for OVI, as well as a marked lanes violation. Appellant initially pled not guilty to the charges and the matter was scheduled for trial. Prior to trial, on December 2, 2010, Appellant filed a motion to suppress any evidence obtained by the allegedly illegal stop. In support of her motion, Appellant argued that the video

recording of the traffic stop failed to show that she left her lane of travel or any other erratic driving that would have justified a stop.

{¶4} A suppression hearing was held on January 31, 2011, at which Trooper Morgan testified for the State. Trooper Morgan testified that he observed a marked lanes violation, and then turned on the video to observe further driving, which he further testified exhibited weaving within the lane of travel. In addition, the State introduced the video recording of the stop. In response to claims by Appellant's counsel that the video failed to show any traffic violation, Trooper Morgan testified that he "could better see" with his eyes "than this camera is showing." Appellant did not offer any evidence; however, Appellant's counsel argued that the video failed to show a marked lanes violation and as such there was no probable cause for the stop.

{¶5} The trial court issued its findings in open court denying Appellant's motion to suppress. In reaching its decision, the trial court noted that "if the Court had to rely solely on the video, the Court would agree with Mrs. McDonald [Appellant's counsel] that the video doesn't conclusively show marked lanes violation, but the Court believes the trooper had the better perspective seated at that distance." As a result, Appellant entered a plea of no contest to the OVI offense, in exchange for the State

dismissing the marked lanes charge. The trial court found Appellant guilty of OVI and sentenced her accordingly. It is from the trial court's denial of her motion to suppress that Appellant now brings her timely appeal, assigning a single assignment of error for our review.

## ASSIGNMENT OF ERROR

"I.     THE COURT BELOW ERRED IN RULING THAT THERE EXISTED PROBABLE CAUSE TO STOP THE DEFENDANT'S VEHICLE WHEN THE VIDEO DID NOT SHOW ANY TRAFFIC VIOLATION TO JUSTIFY THE STOP."

## LEGAL ANALYSIS

{¶6} In her sole assignment of error, Appellant contends that the trial court erred in ruling that there existed probable cause to stop her vehicle when the video did not show any traffic violation to justify the stop. Appellant further states that the issue presented for review is whether the trial court properly overruled her motion to suppress evidence when the video evidence of the events surrounding the traffic stop was in direct contradiction to the trooper's testimony, and failed to show any violation of law that would justify the stop.

{¶7} Our review of a decision on a motion to suppress "presents mixed questions of law and fact." *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539; citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the

best position to evaluate witness credibility. *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988. Accordingly, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them. Id. We then conduct a de novo review of the trial court's application of the law to the facts. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034; *State v. Fields* (Nov. 29, 1999), Hocking App. No. 99CA11, 1999 WL 1125120.

{¶8} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate "are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *California v. Acevedo* (1991), 500 U.S. 565, 111 S.Ct. 1982; *State v. Tincher* (1988), 47 Ohio App.3d 188, 548 N.E.2d 251. If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial.

{¶9} Appellant was initially stopped for a marked lanes violation. R.C. 4511.33, which governs rules for driving in marked lanes provides as follows:

"(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

{¶10} A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws. *State v. Guseman*, Athens App. No. 08CA15, 2009-Ohio-952 at ¶ 20, citing, *State v. Bowie*, Washington App. No. 01 CA34, 2002-Ohio-3553, ¶ 8, 12, and 16, citing *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769. See, also, *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, syllabus. When the officer has probable cause to believe that a traffic violation has occurred, the detention of a motorist is reasonable and constitutional. Id.; see, also, *State v. McDonald*, Washington App. No. 04CA7, 2004-Ohio-5395, ¶ 17-18.

{¶11} Appellant relies on the case of *Village of New Lebanon v. Blankenship* (Montgomery C.P, 1993), 65 Ohio Misc.2d 1, 640 N.E.2d 271, in support of her argument the trooper did not possess probable cause to initiate a traffic stop.   In *Blankenship,* the driver was stopped after he was observed weaving in his own lane of travel, on a road without a centerline. We find the facts of  *Blankenship* to be distinguishable from the facts in this

case. But see, *State v. Guseman*, supra (Judge Harsha's concurring opinion finding no need to distinguish from *Blankenship* because it is nonbinding and finding that "any persuasive effect its rationale may have carried has been extinguished by the subsequent rulings of the Supreme Court of the United States and the Supreme Court of Ohio"). In *Blankenship*, the state charged the defendant with a marked lane violation, contrary to R.C. 4511.33, despite the fact that the lanes were not marked and despite the fact that the officer only observed the defendant weaving within his own lane of travel. The court concluded that the officer's observations of the defendant weaving in his own lane did not support a charge under R.C. 4511.33 or R.C. 4511.25. In addition, as we noted in *Guseman* at ¶ 22, the key issue in *Blankenship* was whether the officer could properly stop the defendant under R.C. 4511.33 or R.C. 4511.25 when the officer only observed the defendant weaving in his own lane. That is not the issue in this case.

{¶12} Here, the court found that the trooper observed Appellant travel outside of marked lanes. Competent, credible evidence in the form of the trooper's testimony from the suppression hearing supports this finding, despite the fact that this violation was not caught on the video. Although Appellant attempts to argue that the trooper testified that Appellant's mirrors, rather than her tires, crossed over the line, a close review of the

transcript reveals that the trooper clarified his testimony to state that her tires crossed the lines, which prompted him to activate his video. Further, although the trial court noted that the video, standing alone, was not enough to show a marked lanes violation, the court noted its belief that the trooper's view would have been better than the camera view, and that the trooper was believable. As such, the trial court found a marked lanes violation and denied Appellant's motion to suppress.

{¶13} Based on the totality of these circumstances, we find competent, credible evidence in the record to support the trial court's decision and as such, we cannot conclude that the trial court erred when it found that the trooper had probable cause to stop Appellant for a marked lanes violation.

{¶14} Accordingly, we overrule Appellant's sole assignment of error.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**