[Cite as *State v. White*, 2018-Ohio-18.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO,                          :
                                        :
        Plaintiff-Appellee,             :       Case Nos. 17CA10
                                        :                 17CA11
v.                                      :
                                        :       DECISION AND
DEANDRE A. WHITE,                       :       JUDGMENT ENTRY
                                        :
        Defendant-Appellant.            :
                                        :       RELEASED 01/02/2018

APPEARANCES:

Angela Miller, Jupiter, Florida, for defendant-appellant.

Kevin Rings, Washington County Prosecuting Attorney, and Nicole Tipton Coil, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for plaintiff-appellee.

Hoover, J.

{¶1}    Defendant-appellant, Deandre A. White ("White"), appeals his conviction and sentence in the Washington County Court of Common Pleas. White was convicted of one count of trafficking in heroin (F-2) with a forfeiture specification and, in a separate incident, one count of trafficking in heroin (F-3). White was sentenced to eight years imprisonment for his F-2 conviction, and to 3 years imprisonment for the F-3 conviction, with the sentences to be served concurrently to one another.

{¶2}    Regarding his F-2 trafficking in heroin conviction, White contends that the trial court erred in denying his motion to suppress evidence because law enforcement had no legal authority to make the investigative stop at issue. We disagree. The law enforcement agency had information from an informant that White was involved in narcotics trafficking; and independent

police work verified the information. Therefore, reasonable suspicion existed to justify the investigative stop. White also contends that his trial counsel provided ineffective assistance by failing to file a motion to suppress evidence found as a result of a pat-down search of his person; and alternatively, that the trial court erred by refusing to allow him to present argument as to the legality of the pat-down search at the motion to suppress hearing. However, we find no merit to White's arguments.

{¶3}    Regarding the F-3 trafficking in heroin conviction, White contends that the trial court erred in denying his motion to suppress evidence because the police unreasonably prolonged a traffic stop in order to conduct a canine sniff of his vehicle. We disagree. Because the police were still in the process of writing the traffic ticket when the canine arrived and conducted the sniff, and thus the stop was not unlawfully extended, we conclude that White's fourth amendment rights were not violated.

{¶4}    Accordingly, we affirm White's conviction and sentence.

### I. Facts and Procedural History

{¶5}    This case originated from a narcotics investigation involving the Washington County Major Crimes Task Force. After receiving complaints of suspicious activity at a house in Marietta, law enforcement officers conducted surveillance of the house. The officers recognized individuals with known criminal narcotics histories going into and out of the house. The officers also observed a black male and a white female repeatedly go to and from the house; but they did not know their identities.

{¶6}    Law enforcement identified the main resident of the house as Emily Welch. At the time of the surveillance, Welch was already under indictment or about to be indicted on drug related charges. The officers decided to use a confidential informant to complete a controlled

purchase of drugs from Welch. After the confidential informant was successful in purchasing heroin from Welch, the officers obtained a search warrant to search Welch's house.

{¶7}     During the execution of the search warrant, approximately an hour after the controlled purchase, Welch admitted to selling heroin to the confidential informant; however, Welch said that she was selling the heroin at the direction of Meriah Shay Dunn. Dunn was known to local law enforcement, and was one of the individuals law enforcement had seen going to and from the house. Welch told law enforcement that Dunn had been at the residence the day of the controlled purchase with the previously mentioned, unidentified black male and white female. Welch identified that black male as "Tony or Grizz", and claimed that he was Dunn's supplier of heroin and crack cocaine. Welch also told police that after completing the controlled purchase, she delivered money to Dunn at a car wash near the Sierra Apartments. According to Welch, when she delivered the money, Dunn was inside of a black SUV with chrome accents along with Tony/Grizz. Welch stated that there was crack cocaine and firearms inside the vehicle.

{¶8}     Upon receiving this information from Welch, law enforcement officers traveled to a Lowe's parking lot near the Sierra Apartments in Marietta. While in the parking lot, they observed a vehicle matching the description provided by Welch driving slowly through the Sierra Apartments. Tony/Grizz, the black male that they had seen earlier in the day at Welch's house, was driving the vehicle. A short time later, the vehicle left the apartments and traveled to the Lowe's parking lot. Three individuals, including Tony/Grizz, then exited the vehicle and went into a China Wind and Subway restaurant. About five to ten minutes later the three individuals returned to the black SUV and a PT Cruiser pulled in next to it. The driver of the PT cruiser, who the officers knew to have an extensive drug history, then got into the SUV. The

SUV did a quick loop around the parking lot before parking again in the same exact parking space it had been in before.

{¶9}   Once the black SUV returned to the parking space, law enforcement officers decided to stop the vehicle by surrounding it with their own vehicles. The individual known as Tony/Grizz was identified as White. A search of the vehicle revealed the presence of narcotics and money. As a result, White was indicted in Case No. 16CR67 on the following offenses: one count of trafficking in heroin, a second-degree felony, in violation of R.C. 2925.03(A)(2) & (C)(6)(e), with a forfeiture specification; one count of possession of heroin, a second-degree felony, in violation of R.C. 2925.11(A) & (C)(6)(d); one count of aggravated trafficking in drugs, a third-degree felony, in violation of R.C. 2925.03(A)(2) & (C)(1)(c), with a forfeiture specification; one count of aggravated possession of drugs, a third-degree felony, in violation of R.C. 2925.11(A) & (C)(1)(b); and one count of trafficking in heroin, a third-degree felony, in violation of R.C. 2925.03(A)(1) & (C)(6)(d).

{¶10}   White pleaded not guilty to all counts of the indictment in Case No. 16CR67.

{¶11}   White, while out on bond and awaiting trial was involved in another traffic stop in Washington County. On this occasion, White was stopped for speeding and for following another vehicle too closely. Before stopping the vehicle for the traffic infractions, police confirmed that White had no active warrants and that his license was valid.

{¶12}   Police records indicate that the traffic stop was initiated at 10:41 a.m. An officer contacted dispatch at 10:42 a.m., stating that White's vehicle was on Putnam Street. At 10:44 a.m., another call was made for assistance because the stop was blocking traffic. When law enforcement officers approached the vehicle White stated he was in Marietta to visit his lawyer, and actually made a phone call to his lawyer. White appeared nervous, but was cooperative with

police. Within the time it took officers to briefly question White, and to obtain his driver's

license, White's attorney, Ray Smith, arrived at the scene. Smith inquired about the reason for

the stop and asked if White was free to leave. Smith was told that White was not free to go, and

that a canine unit was on its way to the scene. Upon Smith's arrival, Sergeant Matt Anderson

returned to a police vehicle and began to write a traffic ticket.

{¶13} A canine conducted a sniff of the vehicle and indicated on the vehicle for the

presence of narcotics at approximately 10:55 a.m. White was then removed from the vehicle and

a search of the vehicle resulted in the confiscation of heroin and methamphetamine. White was

then placed under arrest and Sergeant Anderson ceased writing the traffic ticket. As a result of

the search, White was indicted in Case No. 16CR135 on the following offenses: one count of

trafficking in heroin, a third-degree felony, in violation of R.C. 2925.03(A)(2) & (C)(6)(d), with

a forfeiture specification; one count of possession of heroin, a third-degree felony, in violation of

R.C. 2925.11(A) & (C)(6)(c); one count of aggravated trafficking in drugs, a third-degree felony,

in violation of R.C. 2925.03(A)(2) & (C)(1)(c), with a forfeiture specification; and one count of

aggravated possession of drugs, a third-degree felony, in violation of R.C. 2925.11(A) &

(C)(1)(b).

{¶14} White pleaded not guilty to all counts of the indictment in Case No. 16CR135.

{¶15} White filed a motion to suppress evidence in each case, challenging the validity of

the stops. The trial court held a hearing on both motions to suppress; and ultimately, the motions

were overruled. Thereafter, under a plea agreement, White agreed to plead no contest to the F-2

trafficking in heroin charge and specification in Case No. 16CA67, and to the F-3 trafficking in

heroin charge in Case No. 16CR135. In exchange, the remaining charges in both cases were

dismissed. The trial court found White guilty of the offenses and sentenced him to eight years

imprisonment for the F-2 charge, and to three years imprisonment for the F-3 charge, and ordered that the sentences run concurrently to each other. The trial court also ordered that $2,652.00 and several cell phones be forfeited pursuant to the forfeiture specification in Case No. 16CR67. After sentencing, White appealed his convictions in both Case No. 16CR67 and Case No. 16CR135. We consolidated the appeals sua sponte and now address them together.

## II. Assignments of Error

{¶16}  White assigns the following errors for our review:

First Assignment of Error:

> The trial court erred in denying Appellant White's Motions to Suppress Evidence. Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

Second Assignment of Error:

> Appellant White was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when his counsel failed to challenge the *Terry* pat-down.

Third Assignment of Error:

> The trial court erred in refusing to allow White to argue that evidence obtained from the pat-down on July 14, 2015 should be suppressed. Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 14 of the Ohio Constitution.

## III. Law and Analysis

## A. Motions to Suppress

{¶17}  In his first assignment of error, White contends that the trial court erred by overruling his motions to suppress evidence.

### 1. Standard of Review

{¶18} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Gurley*, 2015-Ohio-5361, 54 N.E.3d 768, ¶ 16 (4th Dist.), citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. At a suppression hearing, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.*; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Thus, when reviewing a ruling on a motion to suppress, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Gurley* at ¶ 16, citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). However, "[a]ccepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Id.*, citing *Roberts* at ¶ 100.

### 2. Fourth Amendment Protections

{¶19} " 'The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures.' " *State v. Shrewsberry*, 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, ¶ 14, quoting *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion of the evidence obtained from the unreasonable search and seizure at trial." *Id.*, citing *Emerson* at ¶ 15; *see also State v. Lemaster*, 4th Dist. Ross No. 11CA3236, 2012-Ohio-971, ¶ 8 ("If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial.").

### 3. The Investigative Stop in Case No. 16CR67 Was Lawful

{¶20} White argues that because he did not commit any traffic violations, and because officers did not observe him selling drugs, the stop of his vehicle in the Lowe's parking lot near the China Wind restaurant was unlawful. We disagree.

{¶21} An investigative stop under the Fourth Amendment, often referred to as a *Terry* stop, allows an officer to briefly stop and temporarily detain individuals in order to investigate possible criminal activity. *State v. Staten*, 4th Dist. Athens No. 03CA1, 2003–Ohio–4592, ¶ 22, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). " 'To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity.' " *State v. Eatmon,* 4th Dist. Scioto No. 12CA3498, 2013–Ohio–4812, ¶ 13, quoting *State v. Kilbarger,* 4th Dist. Hocking No. 11CA23, 2012–Ohio–1521, ¶ 15. " 'The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' " *Id.,* quoting *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶22} Furthermore, the totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Thus, when a court reviews an officer's reasonable suspicion determination, a court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers. *Id.* at 273–274.

{¶23} Here, with the above principles in mind, we conclude that the investigative stop of White's vehicle in the parking lot was justified because of the existence of various factors giving rise to a reasonable suspicion that criminal activity was afoot. Notably, White had been spotted earlier in the day at a residence known to have ties to drug trafficking; the vehicle he was driving was purported to contain drugs and weapons; he was purported to be a supplier of heroin and crack cocaine to local drug traffickers; and police observed White engage in activity regularly associated with drug trafficking – i.e., picking up an individual and making a quick loop with the individual and then dropping the individual off at the place of origin.

{¶24} While some of the information relied upon by the officers came from Welch, a known drug user and trafficker, it should be noted that the police corroborated much of the information through independent police work. *Compare State v. Shepherd,* 122 Ohio App.3d 358, 366, 701 N.E.2d 778 (2d Dist.1997) (in assessing an informant's reliability a presumption of reliability is not extended to an informant who is privy to information solely because he is himself implicated in criminal activity), *with State v. Campbell*, 68 Ohio App.3d 688, 691, 589 N.E.2d 452 (1st Dist.1990) (a tip which by itself lacks sufficient indicia of reliability, may still provide reasonable suspicion justifying an investigative detention if it is sufficiently corroborated through independent police work). For instance, the evidence presented at the motion to suppress hearing established that the police observed White at Welch's residence, that the police verified that White was driving a vehicle matching the description provided by Welch, and that they observed White engage in activity that in law enforcement experience is typically associated with drug activity, i.e. the circling of the parking lot.

{¶25} Thus, based upon the totality of the circumstances, law enforcement had reasonable suspicion necessary to conduct the investigative stop.

**4. The Canine Sniff and Duration of Stop in Case No. 16CR135 Was Lawful**

{¶26}   With regards to Case No. 16CR135, White does not allege that the initial traffic stop of his vehicle was unlawful. Rather, he contends that the canine sniff of his vehicle unlawfully extended the traffic stop. Again, we disagree. Rather, after reviewing the record, we conclude that the purpose of the initial stop had not been concluded at the time the canine indicated on the vehicle; and the stop was not unlawfully extended.

{¶27}   Typically, "[w]hen a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates." *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 36, citing *State v. Carlson*, 102 Ohio App.3d 585, 598, 657 N.E.2d 591 (9th Dist.1995*); see also Rodriguez v. United States*, -- U.S. --, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492 (2015) (ordinary inquiries incident to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance"). " 'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *Id*., citing *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992) (fifteen-minute detention was reasonable); *United States v. Sharp*, 470 U.S. 675, 105 S.Ct. 1568 (1985) (twenty-minute detention was reasonable).

{¶28}   A lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. *State v. Rusnak,* 120 Ohio App.3d 24, 28, 696 N.E.2d 633 (6th Dist.1997). Both Ohio courts and the

United States Supreme Court have determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *State v. Jones,* 4th Dist. Washington No. 03CA61, 2004–Ohio–7280, ¶ 24; *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). "Thus, a canine check of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop." *Jones* at ¶ 24.

{¶29}   The Supreme Court's recent decision in *Rodriguez v. United States*, *supra*, further outlines the limits the Fourth Amendment places on the duration and scope of a traffic stop. In *Rodriguez*, a police officer issued a written warning to the defendant Rodriguez during a traffic stop. *Id*. at 1613. After the officer returned Rodriguez's information and " ' * * * got all the reason[s] for the stop out of the way[,] * * *' " the officer asked for permission to walk his dog around Rodriguez's vehicle. *Id*. After Rodriguez refused to consent to the request, the officer instructed Rodriguez to turn off the ignition, exit the vehicle, and stand in front of the patrol car to wait for a second officer to arrive. *Id*. The dog later conducted a sniff and alerted to the presence of drugs in the vehicle. *Id*. A search of the vehicle revealed a large bag of methamphetamine. *Id*.

{¶30}   The Supreme Court held that while a police officer "may conduct certain unrelated checks during an otherwise lawful traffic stop * * * he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*. at 1615. Accordingly, the Court concluded that police officers may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id*. at 1614-1617.

{¶31} As indicated above, we conclude that the purpose of the initial stop had not concluded at the time the canine indicated on the vehicle. White's vehicle was stopped at approximately 10:41 a.m. An officer contacted dispatch at 10:42 a.m., stating that White's vehicle was on Putnam Street. At 10:44 a.m., another call was made for assistance because the stop was blocking traffic. When law enforcement officers approached the vehicle White stated he was in Marietta to visit his lawyer, and actually made a phone call to his lawyer. White appeared nervous, but was cooperative with police. Within the time it took officers to briefly question White, and to obtain his driver's license, White's attorney, Ray Smith, arrived at the scene. Smith inquired about the reason for the stop and asked if White was free to leave. Smith was told that White was not free to go, and that a canine unit was on its way to the scene. Upon Smith's arrival, Sergeant Matt Anderson returned to a police vehicle and began to write a traffic ticket.

{¶32} Sergeant Anderson had not even concluded writing a citation or written warning to White when the canine conducted a sniff of the vehicle and indicated on the vehicle for the presence of narcotics at approximately 10:55 a.m. Thus, the canine sniff was conducted approximately 14 minutes after White was initially stopped, and before White had been given a citation or warning.

{¶33} The testimony during the suppression hearing indicated that traffic citations are usually completed within 20 minutes. A partially completed traffic citation was admitted as evidence. After narcotics were found, White was arrested; and police ceased writing the ticket. The officers indicated that they acted urgently in an effort to complete the stop because White's vehicle was blocking traffic in downtown Marietta.

{¶34} Based on this record, it appears that the stop was conducted and investigated in a diligent manner. The law enforcement officers present checked White's information, contacted

dispatch, requested a canine, dealt with Attorney Smith, and walked the dog around the vehicle all within 14 minutes of the initial stop, and within the time period necessary to effectuate the original purpose of the traffic stop and prior to completion of a written citation. This is not a case where conducting the sniff prolonged, or added time to, the stop. Thus, we conclude that the actions of law enforcement did not run afoul of the Fourth Amendment or *Rodriguez*, *supra*.

{¶35} Based on the foregoing, we conclude that the trial court did not err in denying White's motions to suppress evidence. Accordingly, his first assignment of error is overruled.

### B. Ineffective Assistance of Counsel

{¶36} In his second assignment of error, White contends that he received ineffective assistance of counsel when his trial attorney failed to file a motion to suppress evidence seized by the officer during his pat-down search of White that occurred subsequent to the investigative stop in Case No. 16CR67. It should be noted that at the motion to suppress hearing conducted in Case No. 16CR67, defense counsel attempted to elicit testimony regarding the legality of the pat-down search. The State objected. The trial court ruled that because the written motion only challenged the validity of the stop, defense counsel could not expand the scope of the motion by contesting the validity of the pat-down search.

{¶37} To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

"Because this issue cannot be presented at trial, we conduct the initial review." *State v. Plymale*, 4th Dist. Gallia No. 15CA1, 2016–Ohio–3340, ¶ 34.

{¶38}   The defendant has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 62. In reviewing the claim of ineffective assistance of counsel, we must indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Quotations omitted.) *Strickland* at 689.

{¶39}   " 'Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se. To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question.' " *State v. Williams*, 4th Dist. Scioto No. 10CA3381, 2012-Ohio-6083, ¶ 15, quoting *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65. Claims of ineffective assistance are rejected when counsel's failure to file a suppression motion was a tactical decision, there was no reasonable probability of success, or there was no prejudice. *State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001). We must presume that trial counsel was effective if counsel "could have reasonably decided that filing a suppression motion would be a futile act, even if there is some evidence to support a motion." *State v. Walters*, 4th Dist. Adams No. 12CA949, 2013-Ohio-772, ¶ 20.

{¶40}   Following examination of the record, it is unclear what evidence was seized during the alleged pat-down search of White's person[1], and whether the pat-down search

---

[1] In his appellate brief, White contends that money and a cell phone were confiscated as a result of a pat-down search. However, this assertion cannot be verified upon review of the record.

occurred as incident to arrest, as a frisk for weapons prior to arrest, or if White was even arrested at all on the date of the incident. In other words, the record lacks sufficient information for us to determine whether a motion to suppress would have been granted. " 'Where the record is not clear or lacks sufficient evidence to determine whether a suppression motion would have been successful, a claim for ineffective assistance of counsel cannot be established.' " *State v. James*, 4th Dist. Ross No. 13CA3370, 2013-Ohio-5475, ¶ 22, quoting *State v. Parkinson*, 5th Dist. Stark No. 1995CA00208, 1996 WL 363435, *3 (May 20, 1996).

{¶41}   Therefore, we find that White has failed to show that a motion to suppress would have had a reasonable probability of success. Accordingly, White has failed to show that his counsel's performance was ineffective, and his second assignment of error is overruled.

### C. Scope of Motion to Suppress in Case No. 16CR67

{¶42}   In his third assignment of error, White contends that the trial court erred by refusing to allow him to argue that evidence obtained from the alleged pat-down in Case No. 16CR67 should be suppressed.

{¶43}   As previously noted, defense counsel argued at the motion to suppress hearing conducted in Case No. 16CR67, that White should be able to challenge the legality of the alleged pat-down search. The State objected; and the trial court ruled that because the written motion only challenged the validity of the stop, defense counsel could not expand the scope of the motion by contesting the validity of the pat-down search.

{¶44}   The actual written motion to suppress filed in Case No. 16CR67 stated as follows:

Now comes Defendant, by and through Counsel, and respectfully requests this

Court for an order suppressing all evidence obtained from a traffic stop which

occurred on July 14, 2015, at Marietta, Washington County, Ohio. The stop of the

Defendant lacked reasonable suspicion based on articulable facts and violated his

Constitutional Rights under the Fourth Amendment to the United States

Constitution and Article I, Section 14, of the Ohio Constitution. The Defendant

would ask for a hearing on this motion at the Court's earliest convenience.

{¶45} "[A] motion to suppress must 'state with particularity the legal and factual issues to be resolved,' thereby placing the prosecutor and court 'on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived.' " *Columbus v. Ridley,* 2015–Ohio–4968, 50 N.E.3d 934, ¶ 23 (10th Dist.), quoting *State v. Shindler,* 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994); *see also* Crim.R. 47 (noting that a pre-trial motion, including a motion to suppress under Crim.R. 12(C)(3), must "state with particularity the grounds upon which it is made * * *."). Thus, White's failure to raise this particular issue in his written motion to suppress constituted a waiver, or forfeiture of the argument. *State v. Taylor*, 10th Dist. Franklin No. 12AP-283, 2012-Ohio-6200, ¶¶ 10, 12 ("defendant did not preserve in his motion to suppress the issue of whether the initial stop was illegal; he argued only that the subsequent search of the vehicle was inappropriate * * *"). Accordingly, the trial court did not err by refusing to allow White to present argument on the legality of the pat-down search at the suppression hearing. His third assignment of error is overruled.

### IV. Conclusion

{¶46} Having overruled all of White's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J., and Abele, J.: Concur in Judgment and Opinion.


For the Court


By:  _____
                    Marie Hoover, Judge




**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**