[Cite as *State v. Wilds*, 2021-Ohio-2554.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 19CA3894 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| JOHNNY WILDS, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 07/20/2021** |

<u>APPEARANCES:</u>

Steven H. Eckstein, Washington Courthouse, Ohio, for Appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay S. Willis, Assistant Scioto County Prosecutor, Portsmouth, Ohio, for Appellee.

Wilkin, J.

{¶1} This is an appeal from a Scioto County Court of Common Pleas judgment that found appellant, Johnny Wilds, guilty of trafficking in heroin, possession of heroin, possession of a fentanyl-related compound, and trafficking in a fentanyl-related compound. Wilds was sentenced to a minimum prison term of 20 years to a maximum of 25 ½ years. Wilds asserts a single assignment of error: trial counsel rendered ineffective assistance by failing to file a motion to suppress in violation of defendant-appellant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution. After reviewing his arguments, the applicable law, and the record, we overrule Wilds' sole assignment of error and affirm the trial court's judgment of conviction.

BACKGROUND

{¶2} The state alleged that on May 22, 2019, Wilds engaged in (1) trafficking in heroin in violation of R.C. 2925.03(A)(2) and (C)(6)(f), a first-degree felony; (2) possession of heroin in violation of R.C. 2925.11(A) and (C)(6)(e), a first-degree felony; (3) trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2) and (C)(9)(g), a first-degree felony; (4) possession of a fentanyl-related compound in violation of R.C. 2925.11(A) and (C)(11)(f), a first-degree felony; and (5) illegal conveyance of drugs of abuse onto grounds of a specified governmental facility in violation of R.C. 2921.36(A)(2) and (G)(2), a third-degree felony.  Counts One through Four contained specifications that sought to confiscate $751 from Wilds as contraband.

{¶3} Wilds' trial began on September 9, 2019.  Immediately prior to the beginning of trial, the state moved to dismiss Count Five, which the court granted.  The state presented five witnesses.  Wilds was the sole witness for the defense.

{¶4} Ohio State Trooper Nick Lewis testified for the state.  Lewis was part of the criminal interdiction team working in the southeastern part of Ohio to stop drug trafficking, among other offenses.  He was familiar with Wilds from a prior traffic stop.  On May 22, 2019, Lewis received an anonymous tip that Wilds was returning from Dayton to Portsmouth with heroin and would go through Hillsboro, Ohio by way of route 73 or route 104.  Detective Metzler from the Southern Ohio Drug Task Force contacted Lewis and informed him that he (Metzler) and Detective Ervin were also looking for Wilds.  Lewis positioned himself at the route

73/104 split near Hillsboro to watch for Wilds at approximately 6 p.m. While watching for Wilds, Deputy Akers pulled up to Lewis' cruiser and the two began to chat. Lewis informed Akers about the tip regarding Wilds transporting heroin. Shortly thereafter, Lewis noticed a green Mustang pass by that he thought was being driven by Wilds, to which Akers concurred. Akers was relatively new to interdiction, so he asked Lewis if he could follow Wilds and Lewis agreed.

{¶5} Deputy Akers testified that he followed Wilds and noticed the Mustang went left of center twice within a few blocks, so he executed a traffic stop. Akers stated that Wilds identified his passenger as Jennifer King and further informed him that his license was not valid. Akers asked Wilds to step out of the car. After Wilds was out of the car, Trooper Lewis arrived at the scene. Akers explained that because King had an outstanding warrant, they arrested her and placed her in Lewis' cruiser. Akers asked Wilds if there were any weapons or drugs in the Mustang, and Wilds answered in the negative. Akers testified that Wilds consented to a search of the Mustang. Lewis discovered what they suspected was heroin in a fake peanut butter jar inside the Mustang. Akers then called the drug task force unit, which collected the evidence.

{¶6} Detective Metzler from the Portsmouth Police Department also joined Akers and Lewis at the traffic stop. Metzler testified that when he arrived, Lewis had already discovered the drugs. Metzler identified the plastic bag that Lewis had recovered from the Mustang that contained what they believed was heroin, and Wilds' cell phone. Metzler used a "Cellbrite machine" that identified outgoing and incoming calls and text messages from Wilds' phone. Metzler read a

number of the texts produced by the machine.  One incoming text to Wilds'

phone from 614-639-4476 stated: "I fucked myself. Spent a 140 for a buddy, all

gone on just ride home, had one left when I got * * * still sick, which is a bunch of

bullshit."  A subsequent text from that same number to Wilds stated: "Will you

please help us? I'll for sure have a paycheck late Wednesday night and she is

going to grab 2 30's each night.  She goes back tomorrow."  Metzler explained to

the jury that "sick" means the person is wanting to use drugs, and "30's" means

"oxycontin."  Wilds responded to the 4476 number with the following text: "I can't

front any, don't have much left."

{¶7} The state further called Lynn Strainic, an analyst employed by the

Ohio Bureau of Criminal Investigation, to testify.  Strainic explained that she

tested the substance recovered by Trooper Lewis from the Mustang, which was

83.97 grams of powder that contained heroin and fentanyl.

{¶8} Wilds testified that he is a drug user, but not a drug trafficker.  He

explained that on the night of the traffic stop he did not go to the Jeffersonville

Outlet Mall to buy drugs to bring back to Scioto County.  He stated that he went

to the mall so that Jennifer King could buy some clothes.  He borrowed the

Mustang from Ralph Hayslip to get to the mall.  Wilds further stated that the

powder containing the heroin-fentanyl mixture was in the Mustang when he

borrowed it from Hayslip.

{¶9} The jury found Wilds guilty on all four counts - possession and

trafficking in heroin, as well as possession and trafficking in a fentanyl-related

compound along with the specifications that forfeited the $751.  The trial court

sentenced Wilds to an aggregate sentence of a minimum of 20 to a maximum of

25 ½ years in prison.  It is this judgment that Wilds appeals, asserting a single

assignment of error.

ASSIGNMENT OF ERROR

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO
FILE A MOTION TO SUPPRESS IN VIOLATION OF DEFENDANT-WILDS'S
RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO
THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE
I OF THE OHIO CONSTITUTION

{¶10} Wilds cites *State v. Turner*, --- Ohio St.3d ----, 2020-Ohio-6773,

--- N.E.3d ----, 2020 WL 7501936 for the proposition that "touching a white 'fog

line' " is insufficient to establish reasonable articulable suspicion to support a

traffic stop.  Wilds then restates the "defense's theory of the case" as set out in

his trial counsel's opening argument that claimed Deputy Akers

> fabricated the traffic violation to stop Defendant-Wilds as there
> was intel that that he would be carrying back heroin from the
> Dayton area.  This is clear he said from the lack of a video as
> there was no cruiser cam on the deputy's cruiser.  The trooper
> cruiser, on the other hand, had a cruiser cam and the fabricated
> stop would have been revealed by the recording had he been the
> one to stop the Mustang.  Plus, it was the trooper who received
> the tip from his dispatcher so why did he not make the stop?

{¶11} Wilds claims that his trial counsel attempted to argue the

constitutionality of the traffic stop to the jury in hopes that the jury would "nullify"

the state's evidence, as opposed to properly raising the validity of the traffic stop

in a pre-trial motion to suppress.  Wilds argues that Deputy Akers did not testify

to any "facts" to justify the traffic stop, but instead stated a "legal conclusion" that

Wilds drove the Mustang "left of center."  Finally, Wilds speculates that had trial

counsel argued the validity of the traffic stop in a pre-trial motion, coupled with

the fact that Akers' cruiser had no dash cam and Akers statement that they wanted to "interdict" Wilds, the trial court would have suppressed the drugs discovered in the Mustang.  Therefore, Wilds contends his trial counsel's representation was deficient by not filing a motion to suppress the evidence and that failure prejudiced him.  Consequently, Wilds asks this court to reverse his convictions, and remand for a new trial.

**{¶12}** In response, the state argues that merely failing to file a motion to suppress does not necessarily equate to ineffective assistance of counsel.  The state claims that *Turner* is not applicable to the traffic stop herein because Wilds crossed the center line, not the fog line.  The state asserts that crossing the center line is probable cause for a traffic stop.  Thus, the state maintains that Wilds' trial counsel had no basis to support a motion to suppress.  Consequently, the state argues, Wilds' trial counsel's representation was not deficient and this Court should overrule his assignment of error and affirm Wilds' convictions.

Law and Analysis

**{¶13}** "The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense."  *State v. Purvis-Mitchell*, 4th Dist. Washington No. 17CA30, 2018-Ohio-4032, ¶ 51.  "To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his or her counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him or her of a fair trial."  *State v. Howard*, 4th Dist. Ross No. 18CA3666, 2019-Ohio-5419, ¶ 51,

citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

*Id.*, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element [— deficient performance or prejudice —] is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.

{¶14} In determining whether a trial counsel's representation of a defendant was deficient, " 'a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Anderson,* 4th Dist. Lawrence No. 17CA6, 2018-Ohio-2013, ¶ 25, quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). " 'Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se. To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question.' " *State v. Williams*, 4th Dist. Scioto No. 10CA3381, 2012-Ohio-6083, ¶ 15, quoting *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65. " ' "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." ' " *State v. Bradford*, 4th Dist. Adams No.

20CA1109, 2020-Ohio-4563, quoting *State v. Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 208, quoting *State v. Gibson,* 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980).

{¶15} "Claims of ineffective assistance are rejected when counsel's failure to file a suppression motion * * * [has] no reasonable probability of success." *State v. White*, 4th Dist. Washington No. 17CA10, 2018-Ohio-18, ¶ 39, citing *State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001). "We must presume that trial counsel was effective if counsel 'could have reasonably decided that filing a suppression motion would be a futile act, even if there is some evidence to support a motion.' " *Id*, quoting *State v. Walters*, 4th Dist. Adams No. 12CA949, 2013–Ohio–772, ¶ 20.

{¶16} In asserting that his trial counsel's performance was deficient by not filing a motion to suppress, Wilds correctly claims that a law enforcement officer must have at least a "reasonable articulable suspicion" that a driver has committed "a crime, including a minor traffic violation" to execute a constitutionally-valid traffic stop. *State v. Bennett*, 4th Dist. Pickaway No. 20CA4, 2021-Ohio-937, ¶ 13, quoting *State v. Petty*, 4th Dist. Washington Nos. 18CA26 & 18CA27, 2019-Ohio-4241, ¶ 12; *accord State v. Mays*, 119 Ohio St. 3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23 (Either a reasonable articulable suspicion, or the more stringent probable cause, that a defendant has committed a crime is required to support a valid traffic stop).

{¶17} Wilds cites the Supreme Court's decision in *Turner*, which held that a police officer does not have a reasonable articulable suspicion to execute a

traffic stop when the officer observes a vehicle " 'driving on', or 'touching' " the "fog line," which is the single white line that marks the right-side of a roadway. 2020-Ohio-6773, ¶ 3. Unlike in *Turner*, which is limited to a marked lane violation under R.C. 4511.33(A)(1) pertaining to driving on or touching the fog line, the traffic stop herein occurred because Wilds drove left of center. Thus, *Turner* is not applicable to the traffic stop herein.

{¶18} Courts in Ohio, including this one, have recognized that a police officer has probable cause to execute a traffic stop, if he or she observes a vehicle crossing the centerline of a road in violation of R.C. 4511.25(A), which requires vehicles to drive on the right side of the road. *See State v. Guesman*, 4th Dist. Athens No. 08CA15, 2009-Ohio-952, ¶ 17-24, *State v. Schmehl*, 3rd Dist. Auglaize No. 2-05-33, 2006-Ohio-1143, ¶ 9 ("Because driving left of center is a traffic violation, an officer who witnesses a driver violating R.C. 4511.25(A) would be justified in effectuating a traffic stop." (footnote omitted)), and *State v. Annis*, 11th Dist. Portage No. 2001-P-0151, 2002-Ohio-5866, ¶ 27, citing *Madison Twp. v. Moore*, 11th Dist. Lake No. 99-L-096, 2000WL 688790, *3 (May 26, 2000) ("This court has held that a vehicle that crossed over the double-yellow lane divider lines with both driver's side tires twice constituted a violation of R.C. 4511.25, driving left of center; therefore, giving the officer probable cause to initiate a traffic stop."). Contrary to Wilds' argument, Akers did testify to facts that supported a violation of R.C. 4511.25(A), i.e., he stated that he observed the Mustang driven by Wilds go left of center, twice.

**{¶19}** Wilds also challenges Deputy Akers and Trooper Lewis' credibility, claiming they conspired to stop him regardless of whether he violated the law. Wilds' claim is based on the decision for Akers to follow him as opposed to Lewis, since Akers did not have a dash camera in his cruiser. But Lewis testified that Akers requested to follow Wilds because he was new to interdiction and wanted the experience. Aside from Wilds' speculation, there is simply no evidence that Akers and Lewis conspired to have Akers follow Wilds because it would be easier for him to "fabricate" a traffic stop. Even though the credibility of Lewis and Akers could be construed as "some evidence" upon which Wild's trial counsel could have filed a motion to suppress, Akers cannot demonstrate that the trial court would have found them not credible and suppressed the evidence. *See State v. Lemaster*, 4th Dist. Ross No. 11CA3236, 2012-Ohio-971, ¶ 12 ("Here, the court found that the trooper observed Appellant travel outside of marked lanes. Competent, credible evidence in the form of the trooper's testimony from the suppression hearing supports this finding, despite the fact that this violation was not caught on the video.")

**{¶20}** Akers thus cannot overcome the presumption that his counsel "could have reasonably decided that filing a suppression motion [based on a speculative conspiracy theory] would have been a futile act." *Walters*, 4th Dist. Adams No. 12CA949, 2013–Ohio–772, ¶ 20. Accordingly, because there is no reasonable probability that a motion to suppress would have succeeded, we overrule Wilds' assignment of error alleging that his trial counsel was ineffective.

CONCLUSION

**{¶21}** Finding that Wilds' trial counsel was not ineffective for failing to file a motion to suppress, we affirm the trial court's judgment of conviction.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Wilds to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Wilds to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.: Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**