[Cite as *State v. Levine*, 2019-Ohio-265.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO, :

    Plaintiff-Appellant, : Case No. 18CA19

    vs. :

EVAN M. LEVINE, : DECISION AND JUDGMENT ENTRY

    Defendant-Appellee. :

_____

APPEARANCES:

Paul G. Bertram, III, Marietta City Law Director and Daniel Everson, Assistant Law Director, Marietta, Ohio, for appellant.

April F. Campbell, Dublin, Ohio for appellee.

_____

CRIMINAL APPEAL FROM MUNICIPAL COURT
DATE JOURNALIZED:1-22-19
ABELE, P.J.

{¶ 1} This is an appeal from a Marietta Municipal Court judgment that granted a motion to suppress evidence filed by Evan Levine, defendant below and appellee herein. Appellant, the State of Ohio, assigns three errors for review:

FIRST ASSIGNMENT OF ERROR:

"WHETHER THE TRIAL COURT ERRED IN RULING IT WAS ILLEGAL TO STOP DEFENDANT'S VEHICLE WHEN THE TRIAL COURT FOUND THAT DEFENDANT TURNED INTO TWO EASTBOUND LANES RATHER THAN INTO ONE LANE;"

SECOND ASSIGNMENT OF ERROR:

"WHETHER THE TRIAL COURT ERRED IN RULING IT WAS ILLEGAL TO STOP DEFENDANT'S VEHICLE FOR A STOPPING VIOLATION UNDER R.C. 4511.33 WHEN THE TRIAL COURT FOUND DEFENDANT [SIC] VEHICLE STOPPED SO AS TO STRADDLE THE STOP BAR (RATHER THAN STOPPING BEHIND THE STOP BAR); AND"

THIRD ASSIGNMENT OF ERROR:

"WHETHER THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE OBJECTIVE REASONABLENESS OF THE TROOPER'S BELIEF THAT THERE WAS PROBABLE CAUSE OR REASONABLE SUSPICION FOR THE STOP."

{¶ 2} Ohio State Highway Patrol Trooper Jordan Hutton stopped the appellee on March 2, 2018 and charged him with (1) driving under the influence (DUI) in violation of R.C. 4511.19(A)(1)(a), (2) DUI in violation of R.C. 4511.19(A)(1)(h), (3) traffic signals/red light in violation of R.C. 4511.13©, and (4) failure to drive in marked lanes in violation of R.C. 4511.33. Appellee filed a motion to suppress the evidence and asserted, inter alia, that the officer lacked a reasonable suspicion or proper justification to make the investigative traffic stop.

{¶ 3} At the suppression hearing, Trooper Hutton testified that on March 2, 2018 at approximately 2:00 a.m., he observed a vehicle turn east from Second Street to Putnam Street, a 4-lane street. Hutton noted that the vehicle immediately turned to the outside lane, the farthest lane from the curb, instead of the closest lane. Hutton then followed the vehicle. Hutton stated that he then noticed the vehicle move to the right lane and approach the flashing red light at the Third Street intersection. Hutton explained, "I noticed the vehicle did stop at the white stop bar but his front tire stopped beyond that. * * * his front tires stopped beyond the clearly marked white stop line, right prior to the crosswalk at the flashing red light." Hutton testified that after the vehicle turned south on Third Street, he activated his lights, and the vehicle then "missed the entry to the left turn lane,

turned left, crossed the white turn lane marker line and then proceeded on to Butler Street, where he slowed and came to a complete stop." Hutton testified that when the appellee attempted to hand over his license, he missed his hand. Hutton also noticed a strong odor of alcohol, that appellee exhibited "extremely bloodshot and glassy" eyes, slurred speech and he that he appeared to be flushed and disheveled. After the appellee exited his vehicle, Hutton asked where he came from and he indicated a bar on Second Street.

{¶ 4} Trooper Hutton testified that he advised the appellee of his *Miranda* rights and when he asked how many drinks he had consumed, he avoided the question and became emotional, but later stated that he had two or three beers. Hutton then asked the appellee to rate his impairment on a scale of one to ten, and he rated himself a three. Hutton also testified that when he asked the appellee to recite the alphabet from G to X, appellee failed in two attempts.

{¶ 5} Trooper Hutton testified that after the appellee agreed to participate in the National Highway Traffic Safety Administration (NHTSA) field sobriety testing battery: (1) he detected six of six possible clues on the horizontal nystagmus test and two of two on the vertical nystagmus test; (2) appellee started the walk and turn test prior to the completion of the instructions, raised his arms above six inches while walking and did not touch heel to toe, turned incorrectly and indicated six of a possible eight clues, and (3) appellee swayed during the one leg stand while in the counting position and raised his arm approximately six inches.

{¶ 6} Trooper Hutton then arrested the appellee and his breath sample tested at .176 grams of alcohol per 210 liters of his breath. However, after the trial court heard testimony and viewed the dash camera video, the court granted the motion to suppress evidence. This appeal followed.

{¶ 7} In the case sub judice, the appellant asserts that the trial court improperly granted the

appellee's motion to suppress evidence. "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7; *State v. Davis*, 2016-Ohio-3539, 67 N.E.2d 22, ¶ 18 (4th Dist.). "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Therefore, when reviewing a ruling on a motion to suppress, we defer to the trial court's findings of fact "if they are supported by competent, credible evidence." *Id.* "'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *Codeluppi* at ¶ 7, quoting *Burnside* at ¶ 8. We review the application of the law to the facts *de novo*. *Burnside* at ¶ 8.

{¶ 8} In determining whether the trial court erred by granting the motion to suppress evidence, we must consider the reasonableness of the traffic stop. "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14 prohibit unreasonable searches and seizures," *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15, and evidence obtained from an unreasonable search and seizure should be excluded from consideration. This court recently held "[t]o justify a traffic stop based upon reasonable suspicion, the officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the driver has committed, or is committing, a crime, including a minor traffic violation. *State v. Hudson*, 4th Dist. Gallia No. 17CA19, 2018-Ohio-2717, ¶ 15, quoting *State v. Taylor*, 2016-Ohio-1231, 62 N.E.3d 591, ¶ 18 (4th Dist.) The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct

constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop. *Id.* Finally, it is important to point out that an officer may stop a vehicle after observing even a de minimis violation of traffic laws. *See State v. Williams*, 4th Dist. Ross No. 14CA36, 2014-Ohio-4897, ¶ 9, citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus.

{¶ 9} In case sub judice, the trial court made, inter alia, the following findings of fact: "The officer stopped the Defendant for the following reasons: 1. Wide turn from north bound Second Street to eastbound on Putnam Street. The Court has reviewed the video submitted into evidence several times and concludes that Defendant did turn partly in both eastbound lanes. 2. Stopping past the stop bar at the flashing light on Putnam at Third. Defendant used a right turn signal and clearly established a stop for the superior road of about seven seconds. Defendant's car straddled the stop bar." However, notwithstanding these factual findings that indicated violations of R.C. 4511.33 and R.C. 4511.13(C), the court held that neither violation created any justification for the stop of the appellee's vehicle. The court held: "The Court declines to lump together several observations to conclude that multiple hunches that are well-founded ultimately, create a constitutional, Terry-type stop of Defendant's vehicle." As an aside, the court went on to find that the officer was justified in expanding his stop "[b]ased on the results of the field tests as found by the Court, the Officer had probable cause to believe the Defendant was impaired by alcohol at the time he operated his vehicle." After the court examined each field sobriety test, which the court noted were performed in substantial compliance with NHRSA standards, the court determined the traffic stop to be improper and granted the motion to suppress evidence. The appellant timely appealed the judgment.

I.

{¶ 10} In its first assignment of error, appellant asserts that the trial court erred by determining that the officer did not have justification to make the traffic stop. At the hearing, Trooper Hutton testified that he observed the appellee swing wide when he turned from Second Street to Putnam Street and into the far lane rather than the nearest lane.

{¶ 11} R.C. 4511.33(A)(1) requires drivers traveling on two or more lane roads to drive "as nearly as practicable, entirely within a single lane or line of traffic." R.C. 4511.36 provides instruction about how a right hand turn should be completed: "The driver of a vehicle intending to turn at an intersection shall be governed by the following rules: Approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway." R.C. 4511.36(A)(1). Reading the statutes in pari materia (R.C. 4511.36(A)(1)) and (R.C. 4511.33)), we conclude that a right hand turn into two neighboring lanes of travel, even when the two lanes run in the same direction, constitutes a marked lanes violation.

{¶ 12} The Supreme Court of Ohio has determined that a stop of a vehicle, when an officer has reasonably concluded that a marked lanes violation has occurred, does not violate the Fourth Amendment. "[W]hen an officer could reasonably conclude from a person's driving outside the marked lanes that the person is violating a traffic law, the officer is justified in stopping the vehicle." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 20. Further, as we concluded in *Hudson*, ¶ 18, "[a] traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." Hudson, citing *Mays*, *supra,* at syllabus. This court has held that "[t]he significance of *Erickson* and *Whren* lies in their holding that even a de minimis violation

of the law provides a basis for a seizure by law enforcement officials. * * * The implication of these decisions is that if a motorist is violating a traffic law, even in a minor aspect, * * * an officer is justified in making the stop. * * * Certainly, even a momentary 'bobble' could give rise to a reasonable, articulable suspicion, if not probable cause, to believe R.C. 4511.33 had been violated in light of the holding and rationale in *Erickson* and *Whren*."  *Hudson* at ¶ 12-16.  As the appellant points out, the principle that even a momentary "bobble" from driving within marked lanes creates probable cause or reasonable suspicion for a stop on a "marked lanes" R.C. 4511.33 violation has been affirmed in later decisions.  See *State v. Matzinger*, 4th Dist. Washington No. 16CA4, 2017-Ohio-324, 81 N.E.3d 841 (traffic stop complies with the Fourth Amendment's reasonableness requirement if officer possesses probable cause or reasonable suspicion to believe that a driver committed marked lanes violation); *State v. Lemaster*, 4th Dist. Ross No. 11CA3236, 2012-Ohio-971, ¶ 12-13 (trooper's testimony supported marked lanes violation despite the fact violation was not caught on video; therefore trooper had probable cause to stop); *State v. Harlow*, 4th Dist. Washington No. 13CA29, 2014-Ohio-864, ¶ 14 (trial court justified in relying on trooper's testimony and DVD to conclude that the trooper had reasonable articulable suspicion [and probable cause] to believe Harlow had failed to drive within the marked lanes making the stop satisfy the Fourth Amendment); *State v. Gunther*, 4th Dist. Pickaway No. 04CA25, 2005-Ohio-3492, ¶ 19 (trial court reasonably concluded officer had probable cause to stop defendant for marked lanes violation; and *State v. Tarlton*, 4th Dist. Pike No. 02CA688, 2002-Ohio-5795, ¶ 11 (even the slightest departure from the marked lane of travel on a highway results in a technical violation of R.C. 4511.33; thus officer justified in making a traffic stop even if the violation is characterized as de minimis).

{¶ 13} The Ninth District considered a similar case in which the defendant "executed a wide right-hand turn. That is, rather than pull into the right-hand lane of East Avenue when she turned right, Ms. Graham immediately turned into its left, inside lane." *State v. Graham,* 2014-Ohio-3283, 17 N.E.3d 112 at ¶ 4 (9th Dist.). The court analyzed the situation: "The question, however, was not whether Ms. Graham had actually violated the statute. It was whether Trooper Jackson had reasonable suspicion to believe that a violation had occurred." *Id.* at ¶ 24. Thus, the Ninth District reversed the trial court's granting of the motion to suppress evidence to the extent that the court found the trooper lacked a reasonable suspicion to stop the car. *Id.* at ¶ 27.

{¶ 14} In the case sub judice, after our review of the evidence and pertinent authority, we believe that the trial court improperly concluded that the appellee's marked lanes violation did not provide reasonable justification for the traffic stop. We further believe that our decision is consistent with this district's jurisprudence, as well as our sister districts, the Supreme Court of Ohio and the United States Supreme Court.

{¶ 15} Consequently, based upon the foregoing reasons, we sustain appellant's first assignment of error.

II.

{¶ 16} In its second assignment of error, the appellant asserts that the trial court erred by determining that the appellee's failing to stop at a stop line does not constitute a justifiable basis for a traffic stop.

{¶ 17} At the suppression hearing, Trooper Hutton testified that he observed the appellee fail to obey a flashing red signal. R.C. 4511.13(F)(1) provides in relevant part:

Highway traffic signal indications for vehicles and pedestrians shall have the following meanings: * * * Vehicular traffic, on an approach to an intersection, facing a flashing circular red signal indication, shall stop at a clearly marked stop line; but if there is no stop line, before entering the crosswalk on the near side of the intersection; or if there is no crosswalk, at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. The right to proceed shall be subject to the provisions that are applicable after making a stop at a stop sign.

{¶ 18} As the appellant points out, a flashing red light operates as a stop sign, and it is unsurprising that the R.C. 4511.13(F)(1) language closely resembles the R.C. 4511.43(A) language applicable to stop signs:

Except when directed to proceed by a law enforcement officer, every driver of a vehicle * * * approaching a stop sign shall stop at a clearly marked stop sign, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where th driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways.

{¶ 19} This court has addressed the issue of a failure to stop at a stop line in *State v. Hudson*, *supra*, 2018-Ohio-2717. In *Hudson*, the defendant committed several traffic violations, including the failure to stop at a stop bar. Hudson stopped beyond another vehicle stopped at a stop sign, but traveled through the intersection without stopping at the stop line. We held: "Hudson did not stop at the stop line near the stop sign, but instead rolled through it while turning right." *Id.* at ¶ 9. Thus, these facts created reasonable suspicion or probable cause that the defendant failed to stop in compliance with R.C. 4511.43(A).[1]

---

[1]After oral argument in the the case at bar, the appellant filed additional authority. In *State v. Sider*, Marietta M.C. No. 2018 TR 2412 (July 13, 2018), the trial court found that when the defendant stopped in the turn lane at an intersection with the back tires of his vehicle on the stop line and one half to three-fourths of his vehicle over the line, the failure to stop before the clearly marked

stop line constituted probable cause for a traffic stop.     In *State v. Strahler*, Marietta M.C. No. 2018 TR 1589 (May 28, 2018), the court determined that an intersection that did not have flashing lights, but continued to operate at green, yellow, then red light, gave the defendant the duty to stop behind the stop bar until the light turned green.     Finally, in *State v. Miller*, Marietta M.C. No. 2018 TRC 5789 (Oct. 29, 2018) the defendant stopped at a red light with front tires beyond the stop bar and the court, citing *Strahler,* concluded that probable cause existed for the traffic stop.     However, the *Miller* court distinguished its decision in this case and noted that Levine "involved a traffic light that had changed to flashing "red" late at night and functioned as the equivalent of a stop sign rather than a traffic light that cycled through green-yellow-red. * * * [T]he driver must proceed to the point at which he has a view of approaching traffic on the intersecting road so that a turn can be made with safety.     The drivers in *Miller* and *Strahler* faced a steady red signal and the court distinguished that the duty to stop has nothing to do with viewing the approaching traffic on the intersecting road (RC 4511.13(F)(1)) before moving into the intersection.     As such, there is nothing to excuse driver 'creep' beyond the stop line as there was in *Weihl* and *Levine.* "

{¶ 20} The Third District, in a very instructive decision, examined the phrase "at a clearly marked stop line" with respect to a R.C. 4511.43(A) (stop sign) violation, and concluded that it must be interpreted to mean "before" rather than "on" that line. In *State v. Miller,* 3d Dist. Marion No. 9-14-50, 2015-Ohio-3529, ¶ 24, an officer charged a driver with failing to stop at a clearly marked stop sign and the trial court granted a motion to suppress evidence. The Third District reversed the judgment and cited the rules of statutory construction when a statute is ambiguous. The court held that the Revised Code does not define "at" or what it means to stop *at* a clearly marked stop line. *Id.* at ¶ 16. The court noted that the Supreme Court of Ohio has not addressed the proper interpretation of R.C. 4511.43(A), or what it means to stop *at* a clearly marked stop sign, that Black's Law Dictionary does not define "at," and Merriam -Webster's Collegiate Dictionary defined "at" as "used as a function word to indicate presence or occurrence, *in, on, or near."* *Miller* at ¶ 17. The court concluded that the R.C. 4511.43(A) requirement that a motorist stop *at* a clearly marked stop sign is reasonably susceptible to more than one interpretation. The court then conducted a thorough analysis of the divided courts on this issue:

> In interpreting nearly identical stop-sign statutes, some courts have concluded that so long as a driver stops on or near a clearly marked stop line, he or she is in compliance with the statute. *See, e.g., State v. Drushal*, 9th Dist. Wayne No. 13CA0028, 2014-Ohio-3088, ¶ 12, 2014 WL 344101, *abrogated on other grounds* by *Heien v. North Carolina*, __ U.S. __, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014); *City of Olathe v. McGregor*, Ks.App. No. 108, 316, 2013 WL 5870040, *3 (Oct. 25, 2013); *Mumper v. State*, Tx.App. No. 05-08-00141-CR, 2009 WL 201142, *2 (Jan. 29, 2009). Other courts have concluded that a driver must stop *before* any part of his or her vehicle crosses a clearly marked stop line. *See e.g., People v. Wood*, 379 Ill.App.3d 705, 708-709, 318 Ill.Dec. 389, 883 N.E.2d 620 (2008); *U.S. v. Mack*, D.Vt. No. 5:14-cr-28, 2014 WL 7140604, *8, fn. 6 (Dec. 12, 2014); *U.S. v. Smith*, M.D.Fla. No. 2:06-cr-42-FtM-29SPC, 2006 WL 2226313, *7 (Aug. 3, 2006); *State v. Daniels*, 158 So.3d 629, 630-631 (Fla.2014); *People v. Binkowski*, 68 Cal.Reptr.3d 741, 157 Cal.App.4th Supp. 1, 6 (2007); *State v. Denner*, 298 Wis.2d 249, 726 N.W.2d 357, paragraph 7, fn. 2 (2006).

*Miller*, *supra*, at ¶ 18. The Third District went on to hold, "[w]e conclude that the General

Assembly did not contemplate that stopping astride - where any portion of a vehicle extends across - a clearly marked stop line would constitute compliance with R.C. 4511.43(A) and hold that a motorist must stop his or her vehicle before the front-most portion of the vehicle breaks the plane of the outermost edge of a clearly marked stop line. In other words, to comply with the statute, a motorist must stop his or her vehicle before any portion of his or her vehicle crosses the edge of the stop line that is furthest from the front-most portion of his or her approaching vehicle." *Id.* at ¶ 20. The court pointed out that the consequences of interpreting "at" to permit a motorist to stop on or near a clearly marked stop line would not readily further any legislative purpose because (1) it would establish a range of stopping point as opposed to a definite stopping point, (2) it would not promote highway safety of motorists and pedestrians, and (3) it would comply with administrative constructions of the statute via the Ohio Manual of Uniform Traffic Control Devices (OMUTCD), which provides the official specifications for highway signs and markings as mandated by R.C. 4511.09. *Id.* at ¶ 21-23. We agree with the Third District's well-reasoned analysis with respect to R.C. 4511.13 violations.[2]

{¶ 21} Additionally, in *Chevron U.S.A., Inc. v. NRDC., Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the court gives guidance concerning statutory interpretation. "First, always, is the question whether [the legislature] is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent [of the legislature]. If, however, the court determines [the legislature] has not directly addressed the precise question at issue, the

---

[2]Appellant also raises the issue of a large vehicle, such as a school bus or tractor trailer, that could come to a complete stop with its front-end well into an intersection and past the pedestrian crosswalk, while a portion of the vehicle may nevertheless be stopped "at" (if construed as straddling) the stop line. As the appellant indicates, this interpretation could lead to absurd and unsafe results.

court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron* at 842-43.

{¶ 22} In Ohio, the agency charged with implementing traffic law is the Ohio Department of Transportation (ODOT). To the extent that ODOT has administratively adopted a construction of Ohio's stopping statutes, as detailed in the OMUTCD included in the *Miller* decision, we also acknowledge that ODOT's construction of the meaning of the statute should receive deference as per *Chevron*.

{¶ 23} Accordingly, based upon the foregoing reasons, we hold that the statutory requirement to stop "at a clearly marked stop line" requires a driver to come to a complete stop *before* the vehicle comes into contact with the stop line. In the case at bar, because the trial court found that "[t]he Defendant's car straddled the stop bar" during its stop at the flashing red light, we conclude that appellant's second assignment of error is well taken.

III.

{¶ 24} In its third assignment of error, the appellant asserts that the proper determination of a suppression issue related to a traffic stop requires a court to look at whether an officer's belief is objectively reasonable under the circumstances. In examining the officer's actions, the United States Supreme Court has given us this instruction:

> We have repeatedly affirmed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. ——, ——, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (some internal quotation marks omitted). To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct.

1302, 93 L.Ed. 1879 (1949).   We have recognized that searches and seizures based on mistakes of fact can be reasonable.   The warrantless search of a home, for instance, is reasonable if undertaken with the consent of a resident, and remains lawful when officers obtain the consent of someone who reasonably appears to be but is not in fact a resident.  *See Illinois v. Rodriguez*, 497 U.S. 177, 183–186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).   By the same token, if officers with probable cause to arrest a suspect mistakenly arrest an individual matching the suspect's description, neither the seizure nor an accompanying search of the arrestee would be unlawful.  *See Hill v. California*, 401 U.S. 797, 802–805, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).   The limit is that "the mistakes must be those of reasonable men." *Brinegar, supra*, at 176, 69 S.Ct. 1302.

But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law.   The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law.   There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Heien v. North Carolina*, ___ U.S. ____, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014)

**{¶ 25}** Thus, the question whether a traffic stop violates the Fourth Amendment * * * requires an objective assessment of a police officer's actions in light of the facts and circumstances.  *Bowling Green v. Godwin,* 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, at ¶ 14.   "The existence of probable cause [or reasonable suspicion] depends on whether an objectively reasonable police officer would believe that [the driver's] conduct * * * constituted a traffic violation, based on the totality of the circumstances known to the officer at the time of the stop."  *Id.* at ¶ 16.   This court has determined that a traffic stop complies with the Fourth Amendment's reasonableness requirement if an officer possesses probable cause or a reasonable suspicion to believe that a driver committed a violation.  *See State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 359, ¶ 62 (4th Dist.); *State v. Littlefield,* 4th Dist. Ross No. 11CA3247, 2013-Ohio-481, ¶ 15; *State v. Matzinger*, 2017-Ohio-324, 81 N.E.3d

841, ¶31-33 (4th Dist.).   In the case sub judice, the officer observed what he believed to be a marked lanes violation and a stopping violation.   We find nothing in the record to support a conclusion that these perceptions were unreasonable.   Based on Trooper Hutton's testimony, we conclude that he possessed a reasonable articulable suspicion to believe that the appellee committed the traffic violations in question.

{¶ 26} Thus, based upon the reasons set forth above, we hereby sustain appellant's assignments of error, reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS

CONSISTENT WITH THIS OPINION.

JUDGMENT ENTRY

It is ordered that the judgment be reversed and this cause remanded for further proceedings consistent with this opinion.   Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J.: Concurs in Judgment & Opinion as to Assignments of Error I & III; Concurs in Judgment Only as to Assignment of Error II

Hoover, J.: Dissents

For the Court

BY: _____
Peter B. Abele, Presiding Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.