[Cite as *State v. Petty*, 2019-Ohio-4241.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case Nos. 18CA26 |
| | | 18CA27 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| MATTHEW E. PETTY, | : | |
| Defendant-Appellant. | : | **RELEASED 10/11/2019** |

<u>APPEARANCES</u>:

Brian A. Smith, Brian A. Smith Law Firm, LLC, Akron, Ohio, for appellant.

Daniel Everson, City of Marietta Law Director's Office, Marietta, Ohio, for appellee.

Hess, J.

**{¶1}** A state trooper stopped Matthew E. Petty and charged him with operating a motor vehicle under the influence and possession of marijuana. Petty pleaded no contest, and the Marietta Municipal Court sentenced him to 90 days in jail, with 80 of the days suspended, suspended his driving privileges for two years, fined him, and sentenced him to a two-year probationary period.

**{¶2}** Petty asserts that the trial court erred in denying his motion to suppress because the officer did not have reasonable suspicion to make the traffic stop. Petty argues that the left turn statute does not require a driver to turn into the lane closest to the center line. We find that although the left turn statute does not require a driver to turn into the lane closest to the center line, we find the officer's belief that the statute requires such a turn is an objectively reasonable mistake of law. Therefore, the officer had

reasonable suspicion to make the stop. The trial court properly denied Petty's motion to suppress. We reject his argument and affirm his conviction.

## I. FACTS

**{¶3}** Trooper Jordan C. Hutton observed Petty driving a vehicle unusually slow in the City of Marietta at 1:00 am in the morning. Trooper Hutton continued to observe Petty until he stopped at a traffic light. Trooper Hutton reported that Petty's front tires were in front of the marked stop bar at the flashing red traffic light. His vehicle then turned left into the outside lane of the four-lane roadway. After observing these violations, Trooper Hutton activated his lights and initiated a traffic stop. Trooper Hutton detected the smell of alcohol and performed field sobriety tests. Petty failed the field sobriety tests and refused breath and urine tests. After a K-9 officer performed an exterior sniff of the vehicle, authorities searched Petty's car and discovered marijuana and a smoking pipe.

**{¶4}** Trooper Hutton issued traffic violations for operating a motor vehicle under the influence in violation of R.C. 4511.19(A)(1)(a) and (A)(2); a stop signal violation under R.C. 4511.13(C); possession of drug paraphernalia in violation of R.C. 2925.141; and possession of marijuana in violation of R.C. 2925.11(C)(3). Perry pleaded not guilty and filed a motion to suppress all the evidence from the traffic stop on the ground that Trooper Hutton had no probable cause for the stop.

**{¶5}** At the suppression hearing the state introduced the dashboard video from Trooper Hutton's cruiser. Trooper Hutton testified that he witnessed Petty's vehicle stopped at a flashing red light signal with the front vehicle tires stopped beyond the marked stop bar. Petty then turned left and immediately turned to the far outside lane of the four-lane road. Trooper Hutton testified that he stopped Petty because of both the

marked stop bar violation and the improper turn violation. Trooper Hutton agreed that because of the location of the marked stop bar, there is an inadequate view of oncoming traffic and it is necessary to stop at the marked stop bar and then pull farther up in front of the bar to see if it is safe to turn. Trooper Hutton testified that under R.C. 4511.36(A)(2), when making a left-hand turn onto a four-lane road, the driver is required to turn into the lane closest to the center lane; it is a violation to turn into the outside lane.

{¶6}    The trial court found that there was no marked stop bar violation. The trial court found that at that stop location, when the signal is controlled by a flashing red light at night, and not the normal working light, it is necessary to stop at the marked stop bar and then, as Trooper Hutton agreed, move forward in order for better visibility to make a turn with safety. The trial court reviewed the dashboard video and determined that Trooper Hutton's cruiser approached Petty's vehicle from a distance behind Petty and it was not possible to determine if Petty had initially stopped behind the mark stop bar. Trooper Hutton's testimony was not probative on this point.

{¶7}    However, the trial court found that Petty violated R.C. 4511.36(A)(2) by making an improper left turn because the statute requires motorists to turn left into the lane closest to the center lane – not the far outside lane. The trial court found that although this is a de minimis violation of the traffic law, it is a violation and provided reasonable suspicion for making the stop. The trial court denied Petty's motion to suppress on the ground that the officer had reasonable suspicion to stop Petty based on a left turn violation of R.C. 4511.36(A)(2).

{¶8}    Petty changed his plea to no contest to possession of marijuana and operating a vehicle under the influence and the state dismissed the remaining charges.

The trial court sentenced him to 90 days in jail, with 80 of the days suspended, suspended his driving privileges for two years, fined him, and sentenced him to a two-year probationary period.

## II. ASSIGNMENT OF ERROR

{¶9}    Petty assigns the following error for our review:

1.  THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS, IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

## III. STANDARD OF REVIEW

{¶10} In general "appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* " 'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " *Codeluppi* at ¶ 7, quoting *Burnside* at ¶ 8.

## IV. LAW AND ANALYSIS

### A.  General Principles

{¶11} To determine whether the trial court erred in denying the motion to suppress, we must consider the reasonableness of the traffic stop. "The Fourth

Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14 prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure. *Id.*

**{¶12}** This case involved an investigatory stop, which must be supported by a reasonable, articulable suspicion that the driver has, is, or is about to commit a crime, including a minor traffic violation. *See State v. Hudson*, 4th Dist. Gallia No. 17CA19, 2018-Ohio-2717, ¶ 14; *State v. Fowler*, 4th Dist. Ross No. 17CA3599, 2018-Ohio-241, ¶ 16, citing *United States v. Williams*, 525 Fed.Appx. 330, 332 (6th Cir.2013), and *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). "To justify a traffic stop based upon reasonable suspicion, the officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the driver has committed, or is committing, a crime, including a minor traffic violation." *State v. Taylor*, 2016-Ohio-1231, 62 N.E.3d 591, ¶ 18 (4th Dist.). The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop. *Id.*

**{¶13}** Moreover, a police officer may stop the driver of a vehicle after observing even a de minimis violation of traffic laws. *See State v. Williams*, 4th Dist. Ross No. 14CA3436, 2014-Ohio-4897, ¶ 9, citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus. "[A] traffic stop with the proper standard of evidence is valid regardless

of the officer's underlying ulterior motives as the test is merely whether the officer 'could' have performed the act complained of; pretext is irrelevant if the action complained of was permissible." *See State v. Koczwara*, 7th Dist. Mahoning No. 13MA149, 2014-Ohio-1946, ¶ 22, citing *Erickson* at 7 and 11, 665 N.E.2d 1091.

**{¶14}** And the mere fact that an officer may have wrongly believed that a defendant could be convicted of the traffic offenses would not obviate reasonable suspicion for the stop. *See Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 15 ("The trial court correctly concluded that the fact that appellee could not be convicted of failure to obey a traffic-control device is not determinative of whether the officer acted reasonably in stopping and citing him for that offense. Probable cause does not require the officer to correctly predict that a conviction will result"); *see also Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014) (officer's mistake of law in stopping a vehicle with one functioning brake light, when the state vehicle code requires only one working brake light, was a reasonable mistake that did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures); *State v. Levine,* 4th Dist. Washington No. 18CA19, 2019-Ohio-265, ¶ 24-25, citing *Heien, supra*; *State v. Hudson*, 4th Dist. Gallia No. 17CA19, 2018-Ohio-2717, ¶ 14-17, *appeal not allowed,* 154 Ohio St.3d 1422, 2018-Ohio-4496, 111 N.E.3d 20.

B. Failure to Stop at Marked Stop Bar

**{¶15}** The trial court made the factual determination based on the dashboard video and Trooper Hutton's testimony that Petty had not committed a marked stop bar violation. Then the trial court made the legal determination that Trooper Hutton's mistaken

belief that Petty committed a marked stop bar violation was not objectively reasonable under the circumstances.

{¶16}   Because the trial court is the trier of fact and is in the best position to resolve factual questions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence.   *State v. Burnside* at ¶ 8. The dashboard video, which showed the considerable distance the cruiser was behind Petty's stopped vehicle as Trooper Hutton approached Petty, the length of time Petty's vehicle remained stopped, the sequences of brake light activity on Petty's vehicle, and Trooper Hutton's testimony concerning the need to stop and then pull forward again to gain visibility needed provide competent, credible evidence to support the trial court's finding that Petty did not commit a marked stop bar violation. Thus, we accept the trial court's factual finding that no marked stop bar violation occurred.

{¶17}   However, even though Trooper Hutton was mistaken about this fact, "the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.' " *Heien v. North Carolina*, at 536, quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Levine,* at ¶ 24. "The limit is that 'the mistakes must be those of reasonable men.' " *Heien* at 536, quoting *Brinegar* at 176.

{¶18}   Therefore determining whether a traffic stop violates the Fourth Amendment "requires an objective assessment of a police officer's actions in light of the facts and circumstances." *Bowling Green v. Godwin,* 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 14. "The existence of probable cause [or reasonable suspicion] depends on whether an objectively reasonable police officer would believe that [the driver's]

conduct * * * constituted a traffic violation, based on the totality of the circumstances known to the officer at the time of the stop." *Id.* at ¶ 16. A traffic stop complies with the Fourth Amendment's reasonableness requirement if an officer possesses probable cause or a reasonable suspicion to believe that a driver committed a violation. *See State v. Levine,* 4th Dist. Washington No. 18CA19, 2019-Ohio-265, ¶ 25, *appeal not allowed,* 155 Ohio St.3d 1457, 2019-Ohio-1759, 122 N.E.3d 217; *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369, ¶ 62 (4th Dist.); *State v. Littlefield,* 4th Dist. Ross No. 11CA3247, 2013-Ohio-481, ¶ 15; *State v. Matzinger*, 2017-Ohio-324, 81 N.E.3d 841, ¶ 31-33 (4th Dist.). Here, based on the dashboard video showing the distance and location of Trooper Hutton's cruiser from Petty's vehicle, Trooper Hutton was approaching Petty's vehicle in the same lane as Petty and from behind, it was physically impossible to determine the location of Petty's front vehicle tires during the entire time Petty was stopped at the flashing red light. Based on the totality of the circumstances, we find that an objectively reasonable police officer would not believe that a marked stop bar violation had occurred. Thus, the trial court properly found no reasonable suspicion for a stop based on a marked stop bar violation.

### C. Improper Left Turn

{¶19}  Although there was no basis for a stop under a marked stop bar violation, the trial court found the stop justified because of a left turn violation. Trooper Hutton observed Petty make a left turn into the far, outside lane on a four-lane roadway.  The trial court found that Petty had violated R.C. 4511.36(A)(2) when he turned left into the far, outside lane rather than the inside lane closest to the center line – a de minimis

violation of traffic law – but a violation that provided reasonable suspicion that an improper left turn violation occurred.

{¶20} Rules for turning at intersections are provided in R.C. 4511.36. R.C. 4511.36(A)(2) provides:

> At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

{¶21} At the suppression hearing, Petty's counsel cited, *State v. Kirkpatrick, infra*, and argued that R.C. 4511.36(A)(2) requires that the driver "square into the turn" and "says nothing about whether the driver must take the turn into the right or left side of the right lane." *See State v. Kirkpatrick*, 2017-Ohio-7629, 97 N.E.3d 871, (1st Dist.). The trial court rejected this argument and cited its own prior decision in *State v. Attaway*, Marietta Municipal Court No. 17TRC4979, unreported, in which it found that a left turn into the far outside lane violated R.C. 4511.36(A)(2).

{¶22} The interpretation of R.C. 4511.36(A)(2) appears to be a case of first impression in our district. We recently interpreted right turns under R.C. 4511.36(A)(1), which states "Approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway." *See State v. Levine, supra*. In *Levine,* we found the officer had reasonable suspicion to make a stop where the driver made a right turn into two neighboring lanes of travel – a wide swing – even when the two lanes run in the same direction. The wide swing constituted a marked lanes violation under R.C. 4511.36(A)(1) and R.C. 4511.33(A)(1) (requiring drivers traveling on two or

more lane roads to drive as nearly as practicable entirely within a single lane or line of traffic). *See also State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008-Ohio-6691 (interpreting R.C. 4511.36(A)(3) involving turns where traffic is restricted to a single direction).

**{¶23}** In *State v. Coles*, 4th Dist. Athens No. 95CA166, 1996 WL 334423 (June 7, 1996),  we found that an officer has reasonable suspicion to make a stop where the driver made a wide left turn outside the marked lane and drove through three or four metered spaces before returning to the travelled portion of the roadway. The state argued that the driver's wide left turn was sufficient to justify the stop considering that the defendant travelled well outside of the proper lane, through three or four parking spaces before entering the far left lane. *Id.* at *2. We found that the marked lane violation provided reasonable suspicion for the stop. *Id.*

**{¶24}** However, in dicta,[1] we discussed the left turn violation and found that the driver arguably violated the left turn statute, R.C. 4511.36(B) (now R.C. 4511.36(A)(2)) because of the "extreme wideness" of the turn:

> The appellant ***arguably*** violated this statute when he made his wide left turn in that he failed to enter the road he was turning onto in the lane just right of center. At least one other court has held that a wide left turn in which the driver drives through parking spaces is sufficient to justify a stop for a traffic offense. See *City of Bryan v. Alwood* (Sept. 14, 1979), [6th Dist.] Williams App. No WMS-79-4, [1979 WL 207224].
>
> * * * In view of the totality of the circumstances, such as the extreme wideness of the appellant's left turn and the fact that he drove through several parking spaces, we find that the officer had reasonable articulable suspicion that the appellant was operating his vehicle in violation of the law.

---

[1]  Courts have  defined dicta as  "statements made by  a court in  an opinion that are not necessary for the resolution of the issues."  *State v. Lewis,* 4th Dist. Lawrence No. 10CA24, 2011-Ohio-911, ¶ 19, quoting *Gissiner v. Cincinnati*, 1st Dist. Hamilton No. C–070536, 2008–Ohio–3161, ¶ 15 (citations omitted).

*State v. Coles*, at *3.

**{¶25}** In *State v. Kirkpatrick, supra,* the appellate court interpreted the left turn

statute, R.C. 4511.26(A)(2). *Kirkpatrick* at ¶ 11-14. The appellate court acknowledged

that it had previously determined that the left turn statute "lends itself to the interpretation"

that drivers turning left must turn into the lane nearest the center line. *See State v.*

*Stadelmann,* 1st Dist. Hamilton No. C-130138, 2013-Ohio-5035. However, it decided that

the rationale of the dissenting judge in *Stadelmann* was more persuasive and adopted

the dissent:

> Former Judge, now Ohio Supreme Court Justice Patrick DeWine dissented
> in *Stadelmann*, stating that R.C. 4511.36(A)(2) was clear and
> unambiguous:
>
> > It simply requires the driver 'square into the turn,' as we are all
> > taught in drivers' education class. The driver must proceed
> > through the intersection and across the center line before turning
> > left. The statute says nothing about whether the driver must
> > make the turn into the right or left side of the right lane. Under
> > the plain language of the statute, a turn into either side is
> > perfectly legal.
>
> *Stadelmann* at ¶ 14.

*State v. Kirkpatrick*, 2017-Ohio-7629, 97 N.E.3d 871, ¶ 11 (1st Dist.), *appeal not*

*allowed,* 152 Ohio St.3d 1422, 2018-Ohio-923, 93 N.E.3d 1004. The court disagreed with

the finding in *Stadelmann* that R.C. 4511.36(A)(2) is ambiguous. "The plain language of

R.C. 4511.36(A)(2) does not prohibit a driver from turning into the outside, right lane,

instead of the inside, left lane." *Id.* at ¶ 13.

**{¶26}** We agree with the rationale in *Kirkpatrick* and find that R.C. 4511.36(A)(2)

is not ambiguous and does not prohibit a driver from turning into the far outside lane when

making a left turn onto a roadway with two or more lanes. It "simply requires the driver

'square into the turn.' " *Kirkpatrick* at ¶ 11, quoting *Stadelmann* dissent, ¶ 14. The state argues that this interpretation of the statute would hypothetically place a right turning driver heading southbound in the same space at the same time with a left turning driver heading northbound. We disagree. The left turning driver must yield the right of way to any vehicle approaching in the opposite direction. *See* R.C. 4511.42(A) ("The operator of a vehicle * * * intending to turn to the left within an intersection* * * shall yield the right of way to any vehicle * * * approaching from the opposite direction, whenever the approaching vehicle * * * is within the intersection or so close to the intersection * * * as to constitute an immediate hazard").

**{¶27}** Although R.C. 4511.36(A)(2) does not prohibit a left turn into the far right lane, Trooper Hutton's belief that Petty's turn violated the statute is an objectively reasonable mistake of law in this case. The *Cole* decision found that R.C. 4511.36(A)(2) "arguably" required a driver to turn into the lane just right of center, albeit in dicta. "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." *Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530, 539, 190 L.Ed.2d 475 (2014); *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 15 (2006) ("We agree with the sentiment expressed in a federal case involving an officer who had stopped a vehicle based on the mistaken belief that the windows were tinted darker than the law permitted. The court observed that the officer 'was not taking the bar exam. The issue is not how well [the officer] understood California's window tinting laws, but whether he had objective,

probable cause to believe that these windows were, in fact, in violation.' "). Thus, the trial

court properly denied Petty's motion to suppress.

V. CONCLUSION

**{¶28}**  We overrule Petty's assignment of error and affirm the judgment of the trial

court.

JUDGMENT AFFIRMED.

Smith, P.J., concurring:

**{¶29}** While I agree with the result contained in the majority opinion, I do so reluctantly. The United States Supreme Court's holding in *Heien v. North Carolina*, *supra*, essentially held that reasonable mistakes of law are no less compatible with the concept of reasonable suspicion than reasonable mistakes of fact. Thus, under *Heien*, law enforcement's initiation of a traffic stop based upon the mistaken belief that a legal violation had occurred is still supported by reasonable suspicion and is justified as long as the mistake of law is reasonable. While I personally disagree with this concept, I agree that we are duty-bound to apply the legal principles set forth in *Heien*.

**{¶30}** Although I understand law enforcement officers are " 'not taking the bar exam' " every time they initiate a traffic stop,[2] in my view they should be held to a higher standard and should have an accurate understanding of the laws which they purport to enforce. It appears the Sixth District Court of Appeals has shared this view. *See State v Babcock*, 2013-Ohio-2366, 992 N.E.2d 1215 (holding "that the exclusionary rule operates to bar the admission of evidence obtained as a result of a traffic stop based on conduct that a police officer mistakenly believes is a violation of the law" and noting that two other districts in Ohio "have refused to allow a mistake of law exception to the application of the exclusionary rule in situations in which a defendant is stopped for a traffic violation when, in fact, the defendant's conduct was lawful.").[3] Admittedly, *Babcock* was decided prior to *Heien*.

---

[2] *City of Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006–Ohio–3563, 850 N.E.2d 698, ¶ 15, quoting *United States v. Wallace*, 213 F.3d 1216, 1220 (C.A.9, 2000).

[3] The *Babcock* court ultimately declined the State's invitation to apply the reasoning set forth in *Godwin* to mistakes of law. *Babcock* at ¶ 22. It reasoned that permitting "traffic stops founded upon an officer's mistake of law 'would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey.' " *Id.*, quoting *United States v. Lopez–Soto*, 205 F.3d 1101, 1106 (9th Cir.2000); *see also United States v.*

**{¶31}** However, turning our attention back to the holding in *Heien*, I note that the *Heien* Court acknowledged that the ultimate " 'touchstone' " of the Fourth Amendment is " 'reasonableness.' " *Heien* at 536, quoting *Riley v. California*, 573 U.S. 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014). This Court recently determined a mistake of law in a law enforcement officer's interpretation of a local ordinance governing right turns at intersections was not reasonable and thus the traffic stop he initiated based upon his mistaken understanding of the law was not supported by reasonable suspicion. *See State v. Ware,* 2019-Ohio-3885, --N.E.3d-- (4th District)*.* In *Ware*, however, this Court was not bound to apply reasoning from other districts, or bound by prior precedent, indicating the ordinance at issue was ambiguous. Finding the ordinance at issue in *Ware* was clear and unambiguous and not subject to varying interpretations, we found the officer's mistaken application of the ordinance to be unreasonable and therefore reversed the trial court's decision denying Ware's motion to suppress the evidence obtained as a result of the illegal stop. *Ware* at ¶ 45, 48.

**{¶32}** Unfortunately, other districts, as well as this Court, have previously opined that the statute at issue herein, R.C. 4511.36(A)(2), which governs left turns in intersections, is ambiguous and thus subject to varying interpretations. *See State v. Stadelmann*, 1st Dist. Hamilton No. C–130138, 2013-Ohio-5035, ¶ 2-3 (stating that "[t]he portion of the statute relevant to our analysis seems to allow for two interpretations."), *but see* Former Judge DeWine's dissenting opinion (finding the statute to be unambiguous);

---

*Lopez–Valdez*, 178 F.3d 282, 289 (5th Cir.1999) ("[I]f officers are allowed to stop vehicles based on their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic stops as pretext for effecting stops seems boundless and the costs to privacy rights excessive"). The *Babcock* court further opined that *Godwin* actually involved a mistake of fact by the officer, not a mistake of law. *Babcock* at ¶ 16.

*State v. Cole*, 4th Dist. Athens No. 95CA166, 1996 WL 334423, *3 (stating in dicta that "appellant arguably violated this statute when he made his wide left turn in that he failed to enter the road he was turning onto in the lane just right of center.") However, of importance, in a more recent case the First District Court of Appeals determined this particular statute to be clear and unambiguous. *State v. Kirkpatrick*, 2017-Ohio-7629, 97 N.E.3d 871, ¶ 13 (1st Dist.) ("We disagree with the finding in *Stadelmann* that R.C. 4511.36(A)(2) is ambiguous. The plain language of R.C. 4511.36(A)(2) does not prohibit a driver from turning into the outside, right lane, instead of the inside, left lane."). In reaching its decision the *Kirkpatrick* court acknowledged and expressly adopted "[f]ormer Judge, now Ohio Supreme Court Justice Patrick DeWine['s]" dissenting opinion in *Stadelmann*, *supra*. *Id.*

{¶33} Nonetheless, determining it was bound by its prior reasoning in *Stadelmann*, albeit in dicta, that mistakes regarding the application of R.C. 4511.36 were objectively reasonable, the *Kirkpatrick* court ultimately held that a mistake by law enforcement in the enforcement of this statute was an objectively reasonable mistake of law as contemplated by *Heien,* and thus it affirmed the trial court's denial of Kirkpatrick's motion to suppress. *Id.* at ¶ 14. In light of our prior statements in *Cole*, *supra*, I believe we are now constrained to do the same.

{¶34} Prior to concluding, however, I would note that at least one court has refused to follow *Heien v. North Carolina*, *supra*, on state law grounds. *See Baldwin v. Estherville, Iowa*, N.D. Iowa, Central Division, 333 F.Supp.3d 817 (2018). The *Baldwin* court explained as follows in support of its reasoning:

* * * 'the mistake-of-law doctrine is broader under the United States Constitution than it is under the Iowa Constitution,' because Iowa does not recognize even a reasonable mistake of law as supporting probable cause or reasonable suspicion. [*State v.*] *Scheffert*, 910 N.W.2d [577,] 585 n.2. The Iowa Supreme Court has maintained this distinction even after the United States Supreme Court decided in *Heien v. North Carolina*, [574] U.S. [54], 135 S.Ct. 530, 539–40, 190 L.Ed.2d 475 (2014), that a reasonable mistake of law could support reasonable suspicion for a traffic stop. *Scheffert*, 910 N.W.2d at 585 n.2; *State v. Coleman*, 890 N.W.2d 284, 298 n.2 (Iowa 2017) ('Of course, the ruling in [*State v.*] *Tyler* [, 830 N.W.2d 288 (2013)] under the Iowa Constitution is unaffected by *Heien*.  Further, the approach in *Heien* would be very difficult to square with our rejection of the good-faith exception to the exclusionary rule under article I, section 8 of the Iowa Constitution in [*State v.*]*Cline*, 617 N.W.2d [277,] 293.).

**{¶35}**  It does not appear any such precedent has been set by the Supreme Court of Ohio.  In the absence of a distinction in Ohio law similar to the distinction in Iowa law, I conclude we are bound to follow the dictates of the United States Supreme Court on this issue.  Accordingly, I concur with the opinion of the majority herein.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J.: Concurs with Concurring Opinion.
McFarland, J.: Concurs in Judgment and Opinion.


                                        For the Court


                                        BY: _____
                                              Michael D. Hess, Judge



                        **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**